EDWARDS, Judge.
Defendant, Anthony Charles Vanier Harden (substituted as defendant in the place and stead of “Underwriter’s at Lloyd’s, London”), appeals from the decision of the trial court in favor of plaintiff-appellee, Jerry D. Bunch, on a life insurance policy issued on a horse.
Plaintiff at the time of the trial was the owner of a quarter-horse gelding named “Copy Cajon”. During the summer of 1974 the horse became infected with equine infectious anemia, otherwise known as swamp fever. The issue here is whether the policy covers the intentional destruction of the animal.
The value of the horse is not in dispute, and it was conceded in argument that, if there is recovery by the plaintiff, the basic amount of $4,500.00 is correct.
Plaintiff sought from the trial court a judgment in his favor in the amount of the policy, plus judicial interest; and additional interest and attorney’s fees as damages. He alternatively sought a declaratory judgment in his favor authorizing him to euthanize the horse and declaring his rights under the policy.
Defendant-appellant contends principally that the trial court erred in holding that the policy provisions cover the intentional destruction of this insured animal. Pertinent to this contention is the following exclusionary provision:
1. This insurance does not cover intentional slaughter, whether by or under the order of any government or public or local authority or any person or body having jurisdiction in the manner, or otherwise; except that the Underwriters will not invoke this particular exclusion as a defence
(a) where the Underwriters shall have expressly agreed to the destruction of the animal, or,
(b) where an insured animal suffers an injury or is afflicted with an excessively painful disease and a qualified Veterinary Surgeon appointed by the Underwriters shall first have given a certificate that the suffering of the animal is incurable and so excessive that immediate destruction is imperative for humane reasons, or,
(c) where an insured animal suffers an injury and a qualified Veterinary Surgeon appointed by the Assured shall first have given a certificate that the suffering of that animal is incurable and so excessive that immediate destruction is imperative for humane reasons without waiting for the appointment of a Veterinary Surgeon by the Underwriters, (emphasis added)
The trial court in oral reasons stated that:
I agree with you that the contract between the parties is the, is the law of the case. We’re not dealing here with an ordinary horse or mule as referred in Merck’s treatise on equine medicine and the treatment of horses. Were dealing here with a very special horse, a specialized horse that has been shown on numerous occasions in quarter horse and cutting horse shows.
For all practical purposes I think, in July and August of 1974, when Copy Ca-jon underwent the acute stages of this, what is colloquially referred to as “swamp fever,” for all practical purposes the horse might as well have been dead at that particular time. Both Dr. Mc-Adams and Dr. Smith, with whose testimony the Court was particularly impressed, recommended euthanization at that time.
The attorney for the defendants made considerable to-do about the fact that *853 neither of those doctors referred in their testimony to the words “imperative for humane reasons.” They both recognized that the horse had suffered from swamp fever and should be euthanized. They both were qualified as experts, and the Court has no doubt in its mind at all that both gentlemen knew what they were talking about when they testified on this witness stand.
The Court was also impressed by Dr. Hayne’s testimony, but by his own testimony, he only saw the horse one time on April 11, 1975, substantially after the acute stages of the swamp fever.
It’s the Court’s opinion that the interpretation of Subsections a, b, and c of Sec. 1 of the Exclusion Clause of this policy satisfactorily meets the requirement with regard to the recommendation by both Drs. Smith and McAdams.
* * * * * *
Accordingly, judgment was granted in favor of plaintiff in the amount of the policy plus judicial interest.
Defendant’s position is that, although equine infectious anemia may render a horse “economically dead” and, as a carrier, a danger to other animals, the suffering is not “incurable and so excessive that immediate destruction is imperative for humane reasons.” We agree, and for this reason we reverse.
Dr. Jimmy B. Smith, DVM, examined the horse on August 16, 1974 and took a blood sample. The sample proved positive for equine infectious anemia. He testified that, in the acute stages of this disease, a horse will undergo “considerable suffering.” However, Dr. Smith’s initial report and his testimony at trial as a whole indicate that his decision to recommend euthanasia was based on the threat of the disease spreading to other horses:
Q. I noticed, Doctor, that the report, progress report, that you rendered to the agent for the insurance company, concludes that Mr. Bunch’s horse, a more chronic form, and he may live a long time; however, he will be sick the rest of his life and is a threat to other horses. Now explain to the Court why he is a threat to other horses. And your conclusion is that quote it is my opinion that all EIA cases should be euthanized to prevent other horses from catching this disease. Do you recall including that statement in your report?
A. Yes, sir.
Q. And is that your opinion ?
A. Yes, sir.
Q. And that opinion is based upon, as you’ve stated here, to prevent other horses from catching the disease?
A. Yes, sir.
Further, Dr. Smith described the suffering of a horse with chronic equine infectious anemia as follows:
Q. Can you relate this suffering down, say to an animal that breaks a leg on a race track ?
A. Well, the suffering is not as acute as an animal with a broken leg, but let’s say, more like an abcess toothache he’s got to live with every day.
Dr. C. G. McAdams, DVM, examined the horse in June of 1974. He testified that in his opinion the horse should have been euthanized for humane reasons and that every horse that contracts EIA should be euthanized. Relative to the suffering of the horse and its effect on his recommendation, Dr. McAdams made the following observations:
Q. Now, if the report had come back from the laboratory that this horse was not suffering from EIA, but from something else, say distemper, is that a disease horses suffer from?
*854 A. Yes.
Q. Would you have recommended that the horse be destroyed ?
A. No.
Q. At the time you saw the horse you were not sure what disease he had?
A. No.
Q. Well, if he had had some disease other than swamp fever, you would not have recommended that the horse be destroyed ?
A. Not if I felt like the disease was curable.
Q. Then your recommendation concerning the destruction of this animal is based upon the fact that the disease is incurable?
A. Right.
Q. And that the horse is a danger to other animal population ?
A. Right.
Q. So that the degree of suffering that the animal had in June 1974, would not have led you to say that the horse is suffering so bad that we can’t let him live any longer? As a matter of fact, you did not say that, did you?
A. No.
Q. And that’s never been your opinion, has it?
A. Well, yes, they suffer.
Q. I’m not talking about suffering. I’m talking about suffering so bad that it’s imperative that the horse be killed immediately because he’s in agony ?
A. When they are in the acute stages they are suffering bad.
Q. All right, let’s go back, Doctor. But you would not have recommended destruction of the animal if he had been suffering to the same degree that you saw him, but if you found out he was suffering from distemper?
A. That’s right.
Clearly, the import of the experts’ testimony is that their recommendations of euthanasia were based on the nature of the disease—that it is incurable and can be spread to other animals—rather than on any excessive degree of suffering visited upon the afflicted animal. In applying the undisputed facts of the case to the policy provisions quoted supra., the trial court therefore committed error of law.
For these reasons, the decision of the trial court is reversed, and judgment is rendered herein dismissing plaintiff’s suit. Costs of this appeal are to be borne by plaintiff-appellee.
REVERSED AND RENDERED.